UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Mark A. Hansen

     v.                         Civil No. 12-cv-466-JD

Sentry Insurance Company


O R D E R

     Mark A. Hansen brought suit against his liability insurer,
Sentry Insurance Company, seeking coverage for claims brought
against Hansen by his former employer, Wilcox Industries Corp.,
in Wilcox Industries Corp. v. Hansen, Civil No. 11-cv-551-PB
(D.N.H. Nov. 28, 2011) ("underlying action").  Hansen now moves
for partial summary judgment on his declaratory judgment and
breach of contract claims.  Sentry opposes summary judgment in
Hansen's favor.[1]


Standard of Review

     Summary judgment is appropriate when "the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.

---

[1]To the extent that Sentry also seeks summary judgment in
its own favor, such relief is not available when combined with an
objection to summary judgment.  See LR 7.1(a)(1).

P. 56(a).[2]  "A genuine issue is one that can be resolved in favor of either party and a material fact is one which has the potential of affecting the outcome of the case." Gerald v. Univ. of P.R., 707 F.3d 7, 16 (1st Cir. 2013).  In deciding a motion for summary judgment, the court draws all reasonable factual inferences in favor of the nonmovant.  Kenney v. Floyd, 700 F.3d 604, 608 (1st Cir. 2012).

When the party moving for summary judgment also bears the burden of proof on an issue, to succeed he must provide conclusive evidence on that issue.  EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 55 (1st Cir. 2002).  An absence of evidence on a material issue weighs against the party with the burden of proof on that issue.  Sanchez-Rodriguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 14 (1st Cir. 2012).


<u>Background</u>[3]

Hansen designed a self-contained breathing apparatus that could switch between filtered ambient air and self-contained air.

---

[2]Hansen mistakenly relies on the New Hampshire summary judgment standard.

[3]The background information is taken from the parties' properly supported facts and the complaint filed in the underlying action.

He completed a prototype of his design by 2000, which is referred to as SCOUT.  Beginning in 2001, Hansen worked with Wilcox to oversee production of the SCOUT.

In November of 2003, Hansen signed a royalty agreement which assigned certain patent rights to Wilcox in return for a licensing fee.  Wilcox hired Hansen in April of 2005 as vice president of the company.  The product known as SCOUT was renamed "PATRIOT".

In June of 2006, while still working for Wilcox and with the knowledge and consent of Wilcox, Hansen founded a company called Advance Life Support Technologies, Inc. ("ALST").  Initially, ALST cleaned and serviced PATRIOT units for Wilcox.  Hansen continued as vice president at Wilcox, where he demonstrated and provided training in the use of PATRIOT products.

Wilcox terminated Hansen's employment in June or July of 2007.  Even after his termination, Wilcox retained Hansen through ALST to service PATRIOT products and to train Wilcox's customers in using PATRIOT products.  Wilcox ended its business relationship with Hansen and ALST in February of 2009.

On November 28, 2011, Wilcox filed the underlying action against Hansen and ALST, alleging claims against Hansen for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duties, and unjust

3

enrichment, and claims against both Hansen and ALST for unfair competition, violation of RSA 358-A, misappropriation of trade secrets under RSA 350-B, and intentional interference with contractual relations.  The court in the underlying action denied ALST's motion to dismiss for lack of personal jurisdiction.  The court granted the defendants' motion to dismiss the claims for breach of the implied duty of good faith, violation of RSA 358-A, breach of fiduciary duties, unjust enrichment, and intentional interference with current contractual relationships (in contrast to prospective relationships).  The defendants brought counterclaims against Wilcox, seeking a declaratory judgment on the issue of trade secrets and the parties' nondisclosure agreement.  The parties entered a stipulation of dismissal in the underlying case on November 7, 2012.

Sentry provided commercial general liability and commercial umbrella insurance coverage to Wilcox under a series of policies.[4]  The policies cover, among other things, "those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury liability,'" which includes "[o]ral or written publication of material that slanders

---

[4]The policies are referred to by No. 24-13305-01.  Because the parties do not distinguish among the policies for purposes of the present motion, they are treated together.

or libels a person or organization or disparages a person's or
organization's goods, products or services."  An insured, under
the policies, is Wilcox and also includes Wilcox's "executive
officers" and directors "but only with respect to their duties as
your officers or directors."  "'Executive officer' means a person
holding any of the officer positions created by [Wilcox's]
charter, constitution, by-laws or any other similar governing
instrument."  Complaint, Dkt. No. 1, Exhibit 3 (CGL policies).

## Discussion

In this case, Hansen seeks summary judgment on his
declaratory judgment and breach of contract claims, arguing that
Sentry breached its duty to defend him in the underlying action.
Sentry asserts that it owed no duty to defend Hansen because he
was not an insured for purposes of the claims in the underlying
action, that even if a duty to defend arose it need not reimburse
certain fees, that it cannot be required to pay damages
determined by an undisclosed settlement, that lost royalties are
not consequential damages, and that its defenses based on
exclusions survive summary judgment.  Because the issue of
whether Hansen acted in the capacity of an insured under Sentry's
policies is dispositive, other issues are not addressed for
purposes of Hansen's motion.

A.   Burden of Proof

       Hansen's motion for summary judgment is premised on the
assumption that Sentry bears the burden of proving that it was
not obligated to defend Hansen in the underlying action.  Because
Hansen's declaratory judgment claim is brought pursuant to 28
U.S.C. § 2201, however, the burden-shifting provision of RSA
491:22-a does not apply.  Therefore, Hansen bears the burden of
showing that he is an insured under the Sentry policy and that
the claims in the underlying action trigger Sentry's duty to
defend him.  See EnergyNorth Nat. Gas., Inc. v. Associated Elec.
& Gas Servs., Ltd., 21 F. Supp. 2d 89, 91 (D.N.H. 1998); see also
Town of Allenstown v. Nat'l Cas. Co., 36 F.3d 229, 233 (1st Cir.
1994).  Hansen also bears the burden to prove his breach of
contract claim.  See Wilcox Indus. Corp. v. Hansen, 879 F. Supp.
2d 296, 311 (D.N.H. 2012).


B.   Duty to Defend

       Because an insurer's duty to defend its insured arises
before the underlying litigation is completed, the duty is
determined based upon the allegations in the underlying
complaint.  Great Am. Dining v. Phil. Indem. Ins. Co., --- A.3d -
--, 2013 WL 656908, at *9 (N.H. Feb. 25, 2013).  An insurer's
"'duty to defend arises whenever an insurer ascertains facts that

6

give rise to the possibility or the potential of liability to indemnify . . . .'" Id. (quoting 14 L. Russ & T. Segalla, Couch on Insurance 3d § 200:3, at 200-9 to 200-10). "An insurer's obligation is not merely to defend in cases of perfect declarations, but also in cases where, by any reasonable intendment of the pleadings, liability of the insured can be inferred, and neither ambiguity nor inconsistency in the underlying writ can justify escape of the insurer from its obligation to defend." N. Sec. Inc. Co. v. Connors, 161 N.H. 645, 650 (2011).

In support of summary judgment, Hansen asserts that Sentry was obligated to defend him in the underlying action based on the allegations in Counts 3, 6, and 8 in the underlying complaint.[5] He contends that those claims allege libel, slander, or disparagement of Wilcox or its products, which is covered as "personal and advertising injury" in "Coverage B" of the policies. Hansen further contends that he is an insured under the Sentry policies because some of the disparaging statements, alleged in the underlying action, were made while he was vice

---

[5]Wilcox alleged common law unfair competition in Count 3, which was construed as a claim for commercial disparagement; breach of fiduciary duties in Count 6; and intentional inference with prospective contractual relations in Count 8.

president at Wilcox and because Sentry cannot show that the exception for injury caused by the insured applies.

Sentry contends that it had no duty to defend Hansen in the underlying action because he was not an insured, as defined in the policies.  Sentry argues that Hansen's alleged disparaging statements were not made with respect to his duties as vice president or while he was still employed by Wilcox.  Sentry also disputes that Counts 3 and 6 in the underlying complaint would trigger coverage under the personal and advertising injury provision in the policies.[6]

"The interpretation of insurance policy language is a question of law for [the] court to decide."  Great Am. Ins. Co. v. Christy, 164 N.H. 196, 200 (2012).  Policy language is interpreted "as would a reasonable person in the position of the insured based upon a more than casual reading of the policy as a whole."  Rivera v. Liberty Mut. Fire Ins. Co., 163 N.H. 603, 606 (2012).  "Policy terms are construed objectively; where the terms are clear and unambiguous, [the court] accord[s] the language its natural and ordinary meaning."  Great Am. Ins. Co., 164 N.H. at 200.

---

[6]Because Sentry concedes that Count 8 pertains to disparagement that could be covered under the policies, it is not necessary to decide whether Counts 3 and 6 would also trigger coverage.

The Sentry policy defines an "insured" to include Wilcox and its executive officers and directors "but only with respect to their duties as your officers or directors."  The parties agree that while Hansen was vice president of Wilcox, he was an executive officer.  Therefore, Hansen was acting in the capacity of an insured if "by any reasonable intendment of the pleadings," Connors, 161 N.H. at 650, Hansen's liability could be based on allegedly disparaging statements that were made "with respect to [his] duties" as vice president.

    1.  Timing

    Hansen formed his new company, ALST, in March of 2006 but continued to serve as vice president of Wilcox until June or July of 2007.[7]  The allegations in the underlying action do not provide dates or a time frame for when Hansen's allegedly disparaging conduct occurred.  Hansen relies on the deposition testimony of Wilcox's president, James Teetzel, to show that the claims against him were based on statements he made before he was terminated by Wilcox.  Sentry disputes Hansen's interpretation of Teetzel's testimony, offers other evidence to show that the

---

    [7]Although Hansen contends he was terminated in July of 2007, in the underlying action, Wilcox alleged that he was terminated on June 15, 2007.

9

claims were not based on Hansen's conduct while he was vice
president, and points to the discussion of the claims in the
orders in the underlying action.

The court need not resolve the disputed issue of whether the
claims in the underlying action were possibly based on Hansen's
conduct while he was vice president because Hansen has not shown
for purposes of summary judgment that his alleged disparaging
conduct was in his capacity as an insured.  Therefore, for
purposes of the current motion for summary judgment, the court
will assume that the claims in the underlying action arose, at
least in part, from Hansen's conduct while he was vice president.

    2.  Duties

    "Under New Hampshire law, officers and directors of a
corporation owe a fiduciary duty to the corporation and its
shareholders."  In re Felt Mfg. Co., Inc., 371 B.R. 589, 611
(Bkrtcy. D.N.H. 2007); Rosenblum v. Judson Eng'g Corp., 99 N.H.
267, 271 (1954).  The fiduciary duties of corporate officers
include the duties of due care, loyalty, and good faith.  See
Kessler v. Gleich, 156 N.H. 488, 494-95 (2007); In re Mi-Lor
Corp., 348 F.3d 294, 303 (1st Cir. 2003) (Massachusetts law); In
re Robotic Vision Sys., Inc., 374 B.R. 36, 45 (Bkrtcy. D.N.H.
2007) (Delaware law).  Therefore, the fiduciary duty owed by a

corporate officer to his employer "demands that the employee act
solely for the benefit of the employer, never to the employer's
detriment." Liberty Mut. Ins. Co. v. Ward, 1994 WL 369540, at *4
(D.N.H. July 11, 1994); see also Rosenblum, 99 N.H. at 271-72;
Felt Mfg., 371 B.R. at 611-12.

Wilcox alleged in Count 8 of the underlying action that as
vice president and then consultant "Hansen had intimate knowledge
of Wilcox's customer information as well as information about the
potential new customers that Wilcox was marketing its life
support technology to." Wilcox, 11-cv-551-PB, (D.N.H. Nov. 28,
2011) Compl. ¶ 66. "Hansen and ALST are now using that same
proprietary customer information to market and sell their own
products, and Hansen is offering service contracts to existing
Wilcox customers." Id. ¶ 67. "Defendants are intentionally
targeting existing and prospective customers of Wilcox to sell a
product that incorporates Wilcox's technology and directly
competes with Wilcox's product." Id. "Upon information and
belief, Hansen is also making harmful false statements about
Wilcox and its technology while marketing his own products to
Wilcox customers." Id. Wilcox further alleged that it had been
damaged by Hansen's actions.

Hansen contends that such conduct could have been done
within the capacity of an insured under the policies, that is,

11

the conduct alleged could have been done "with respect to" his duties as vice president of Wilcox, because the conduct need only be related to his duties.  He argues that because he had contact with Wilcox's customers in his role as vice president, his alleged conduct was related to his duties as vice president.  He further argues that if Sentry intended to exclude coverage for injuries caused by an officer to his employer, that should have been made explicit as is the case for employees other than officers.[8]

Hansen's arguments ignore his fiduciary duties as vice president of Wilcox.  The distinction between a non-officer employee and an executive officer is that Hansen's position as vice president imposed fiduciary duties on him that were not imposed on an ordinary employee.  In Count 8, Wilcox alleges that Hansen was self-dealing to Wilcox's detriment and was stealing Wilcox's customers.  The allegations in Count 6 are even more explicit, stating that Hansen breached his fiduciary duties by betraying the confidence and trust bestowed on him as vice president of Wilcox and by using trade secrets and other confidential and proprietary information to compete with Wilcox.

---

[8]The policies include employees who are not officers of the insured as insureds "but only for acts within the scope of their employments" and excludes coverage for personal and advertising injury to the insured.

12

Therefore, the conduct alleged in the underlying action was not done "with respect to" Hansen's duties as vice president of Wilcox.

Courts that have considered coverage of a corporate officer as an insured under an employer's policy have concluded that "the policies provide no coverage for injuries arising from a corporate officer's breach of a duty owed to the corporation." Farr v. Farm Bureau Ins. Co., 61 F.3d 677, 681 (8th Cir. 1995) (citing cases); Haggerty v. Fed. Ins. Co., 32 Fed. Appx. 845, 848-49 (9th Cir. 2002) (citing cases).  A corporate officer "could not have been acting in an insured capacity while allegedly acting against the interests of the named insured." Haggerty, 32 Fed. Appx. at 848.  Because Hansen's alleged conduct was adverse to Wilcox's interests, Hansen could not have been acting with respect to his duties as vice president of Wilcox, and therefore was not acting in an insured capacity.

Hansen has not shown that he was acting in the capacity of an insured under Sentry's policies for purposes of the underlying action.  As a result, he has not shown that Sentry owed him a defense in the underlying action.  Hansen is not entitled to summary judgment in his favor on his declaratory judgment and breach of contract claims.

13

<u>Conclusion</u>

For the foregoing reasons, the plaintiff's motion for partial summary judgment (document no. 16) is denied.


SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge

April 22, 2013

cc:  Michael F. Aylward, Esquire
     Stephen B. Mosier, Esquire
     Clark Proffitt, Esquire
     Todd A. Sullivan, Esquire

14